1
2
3
4
5
6
7
8                             UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10

11   NAIM I. AYAT,                              No. C 06-1574 JSW (JL)

12           Plaintiff,

13      v.                                      **ORDER GRANTING DEFENDANT'S
                                                MOTION TO COMPEL RULE 35
14   SOCIÈTÈ AIR FRANCE, ET AL.,                EXAMINATIONS (DOCKET # 51, 62)**

15           Defendants.
     _____/
16

17   **I.      INTRODUCTION**

18           Defendant Air France moves pursuant to Rule 35 of the Federal Rules of Civil

19   Procedure and this Court's January 9, 2007 Notice granting permission to file this motion

20   for an order compelling Plaintiff Naim I. Ayat to submit to physical and mental

21   examinations.  Air France's Motion was heard on March 21, 2007**.**  Having considered the

22   pleadings, the record and oral argument, this Court hereby GRANTS Air France's Motion to

23   Compel Rule 35 Examinations.

24           Ayat's mental and physical condition is in controversy and good cause exists for the

25   examinations.  Air France may conduct the mental examination of Ayat as it proposes,

26   using both a psychiatrist and a neuropsychologist.  Neither a third party observer nor a

27   recording device shall be permitted in the examining room.  A neutral court appointed

28   translator may be present.  The Rorschach Test, the Wechsler Adult Intelligence Scale and

United States District Court

For the Northern District of California

1  the Wechsler Memory Scale are appropriate to assess Ayat's psychological condition.

2  Finally, the addition of Goodrich as a defendant does not warrant denying this motion or

3  postponing the examinations.

4  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

5          Plaintiff, Naim I. Ayat, was a passenger aboard Air France Flight 358 from Paris,

6  France to Toronto, Canada on August 2, 2005.  Air France is the air carrier that operated

7  Flight 358.  Upon landing at Toronto's Pearson International Airport, the aircraft overran the

8  runway and crashed into a ravine.  Ayat filed his complaint on February 28, 2006, seeking

9  compensatory damages arising from his injuries.  All discovery in this case has been

10 referred by the district court (Hon. Jeffrey S. White) as provided by 28 U.S.C. section

11 636(b) and Civil Local Rule 72.  The close of fact discovery is January 20, 2008.  The close

12 of all expert discovery is March 28, 2008.  A jury trial is set for October 6, 2008.

13         On November 6, 2006, Ayat filed his response to Air France's interrogatories.

14 Response to interrogatory number six states:

15
16         Plaintiff claims all available elements of damages ... This includes, but is not limited
           to, past and future medical, rehabilitation and care taking expenses, past and future
17         mental pain and suffering, disability, disfigurement, discomfort loss of past and future
           earning capacity, fear and terror, emotional distress, discomfort, anxiety, loss of
18         enjoyment of life, physical injury, past and future pain and suffering and damage to,
           loss and/or destruction of personal property.  Plaintiff suffered and continues to
19         suffer from physical injuries including but not limited to smoke inhalation, back pain,
           earaches, significant myofascial pain syndrome, depression, post-traumatic stress
20         disorder, loss of mobility, knee pain, weight gain, the sequella of said injuries, and
           the significant loss of the ability to lead a normal and enjoyable life as a result of
21         these injuries.  (See Lee Decl., Exhibit B).

22 Ayat's response to interrogatory number fifteen identifies the following experts who will

23 provide testimony:

24 Alex Barchuk, M.D.                          Claude S. Munday, Ph.D.
   Physical Medicine and Rehabilitation       Neuropsychologist
25 Nature and extent                          Nature and extent of
   of Plaintiff's physical injuries           Plaintiff's psychological injuries

26 (See Lee Decl., Exhibit B).

27         On November 15, 2006, counsel for Air France made an initial inquiry about

28 scheduling medical examinations, as provided by Federal Rule of Civil Procedure 35.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Ayat's counsel objected, and sought additional information regarding the proposed

2   examinations.  On November 16, 2006, counsel for Air France e-mailed Ayat's counsel

3   outlining the legal basis for its Rule 35 request.  On November 21, 2006, Air France

4   provided Ayat with the details of mental and physical examinations to be conducted by Dr.

5   Marmar, Dr. Hooker and Dr. Prieto in San Francisco.  On November 27, 2006, Ayat's

6   counsel sent an e-mail to counsel for Air France objecting to the examinations on the

7   grounds that: (1) Air France did not have good cause for the examinations prior to deposing

8   Ayat's treating physicians; (2) Air France had not indicated whether the examinations could

9   be recorded or attended by a representative for Ayat; and (3) both a psychologist

10  [psychiatrist] and a neuropsychologist was not necessary.  (See Lee Decl., Exhibit B;

11  McGrory Decl., Exhibits A, B).  On January 9, 2007, this Court granted Air France

12  permission to formally file this motion.

13          On January 8, 2007, Ayat filed an amended complaint naming Goodrich as a

14  defendant.  (See McGrory Decl., Exhibit F).  On February 20, 2007, Goodrich filed a Motion

15  to Dismiss two of the four counts.  (See McGrory Decl., Exhibit G).

16  **Air France's Proposed Rule 35 Examinations**

17          1) Mental examination: To be conducted at the University of California, San

18  Francisco at a mutually agreeable date and time in two parts:

19          a. Charles Marmar, M.D., a psychiatrist and Vice-Chair of the Psychiatry Department
            at the University of California, San Francisco would conduct the following tests and
20          examinations: (I) Structured clinical interview for DSM-IV Diagnosis; (ii) Clinician
            Administered PTSD Scale; (iii) Developmental History; and (iv)  Lifetime Trauma
21          History Interview.  Dr. Marmar anticipates that his examination will take
            approximately four (4) hours.
22
            b.  William Hooker, Ph.D., a clinical neuropsychologist at the University of California,
23          San Francisco would conduct the following non-invasive tests and examinations: (I)
            PTSD Checklist; (ii) Quality of Life Inventory; (iii) Minnesota Multi-Phasic Personality
24          Inventory – 2; (iv) Rorschach Test; (v) Portions of the Wechsler Adult Intelligence
            Scale – 3rd Edition and the Wechsler Memory Scale – 3rd Edition; (vi) Hopkins
25          Symptom Checklist-90-R; and (vii) Beck Depression Inventory- II.  Dr. Hooker
            anticipates that his examination will take approximately four (4) hours.
26
            c.  Air France agrees to provide a court-certified interpreter in the Arabic language to
27          alleviate any communication concerns that Plaintiff may have about the fact that
            English is not Plaintiff's first language.
28

1        d.  To the extent possible, Dr. Marmar and Dr. Hooker will attempt to schedule their
2        examinations to take place on the same day so as to minimize Plaintiff's travel from
         Rohnert Park to San Francisco.

3        2) Physical examination: To be conducted at a mutually agreeable date and time at

4   the office of Victor Prieto, M.D., an orthopedic surgeon at Saint Francis Memorial Hospital

5   in San Francisco.  Dr. Prieto's physical examination will consist of a patient history interview

6   and a non-invasive physical examination of the plaintiff.  Dr. Prieto anticipates that his

7   examination will take approximately 1 to 2 hours.

8        A.  Air France agrees to provide a court-certified interpreter in the Arabic language to
         alleviate any communication concerns that plaintiff may have about the fact that
9        English is not plaintiff's first language.  Air France objects to having any of these
         physical or mental examinations recorded or otherwise monitored or attended by
10       plaintiff's attorney, psychiatrist, or other third-party observer.

11  **III.  Analysis**

12                              **A.  Governing Law**

13       Under Federal Rule of Civil Procedure 35(a), when the mental or physical condition

14  of a party is in controversy, the court may order the party to submit to a physical or mental

15  examination by a suitably licensed or certified examiner.  The order may be made only on a

16  motion for good cause.  Fed.R.Civ.P. 35(a).

17       A party seeking to compel a mental or physical examination of an adverse party

18  must demonstrate that (1) the adverse party's mental or physical condition is in controversy

19  and (2) there is good cause for the examination.  In the leading case of *Schlagenhauf v.*

20  *Holder*, 379 U.S. 104 (1964) the Supreme Court found that the  "in controversy" and "good

21  cause " requirements of Rule 35 "are not met by mere conclusory allegations of the

22  pleadings - nor by mere relevance to the case - but require an affirmative showing by the

23  movant that each condition as to which the examination is sought is really and genuinely in

24  controversy and that good cause exists for ordering each particular examination.  *Id.* at

25  118.

26  **i.      Ayat's mental condition is "in controversy.**"

27       In *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.Cal.1995), the district court

28  conducted a thorough analysis of case law to determine whether a party's claim of

United States District Court
For the Northern District of California

"emotional distress" is sufficient to place that party's mental state in controversy sufficient to justify a Rule 35 examination.  The court found that "garden-variety" emotional distress alone is not sufficient to place a party's mental state in controversy.  *Id.* at 97.  Still, the court found that courts will order a mental examination where the case involves, in addition to emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; or (5) plaintiff's concession that his or her mental condition is "in controversy" with in the meaning of Rule 35(a).  *Id.* at 95. Further, an alleged ongoing mental or emotional illness puts the claimant's mental condition in controversy.  *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D.Cal.1995); *Turner* at 97.

First, Ayat has not alleged a cause of action for intentional or negligent infliction of emotional distress.  Ayat's Complaint states, "[t]his action seeks compensatory damages arising from the bodily injury and *emotional distress* sustained..."  (See Lee Decl., Exhibit A).  A claim for emotional distress alone will not in itself put the plaintiff's mental condition in controversy.  See *Turner* at 98.

Second, Ayat has alleged a specific mental or psychiatric injury or disorder.  Ayat's response to interrogatory number six states, "Plaintiff suffered and continues to suffer from physical injuries including but not limited to ... depression, post-traumatic stress disorder ... ."  (See Lee Decl., Exhibit B).  Both depression and post-traumatic stress disorder constitute a specific mental or psychiatric injury or disorder.

Third, Ayat arguably states a claim of unusually severe emotional distress.  In response to interrogatory number six, Ayat asserts that he seeks damages for, *inter alia*:

> ... loss of past and future earning capacity, fear and terror, emotional distress, discomfort, anxiety, loss of enjoyment of life, ... , past and future pain and suffering ... Plaintiff has suffered and continues to suffer from depression, post-traumatic stress disorder, ...  and the loss of ability to lead a normal and enjoyable life as a result of these injuries.  (See Lee Decl., Exhibit B).

Ayat's response to interrogatory number six seems to indicate severe emotional distress.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Fourth, Ayat's response to interrogatory number fifteen indicates that he will offer expert testimony to support a claim of emotional distress.  Ayat's response states:

> Plaintiff has not yet determined what experts Plaintiff will call at trial pursuant to Federal Rule of Civil Procedure 26(a)(2).  However, Plaintiff does expect the following individuals to provide testimony pursuant to Federal Rule of Evidence 702:
>
> Alex Barchuk, MD                         Claude S. Munday, Ph.D.
> Physical Medicine and Rehabilitation     Neuropsychologist
> Nature and extent of Plaintiff's         Psychological injuries
> physical injuries

(See Lee Decl., Exhibit B).  Ayat plans to offer the testimony of neuropsychologist Dr. Claude S. Munday, Ph.D., to support his claim of psychological injuries.

Fifth, Ayat does not argue that his mental condition is not "in controversy" within the meaning of Rule 35(a).

Finally, Ayat specifically alleges that his mental conditions are "ongoing" in his response to interrogatory number six.  Ayat states, "[p]laintiff suffered and continues to suffer from ... depression, post-traumatic stress disorder..."  (See Lee Decl., Exhibit B).

Ayat's mental condition is clearly "in controversy."  According to the court in *Turner*, a plaintiff's mental condition is in controversy when *one* of the five factors are found.  Here, while Ayat has not brought an action for intentional or negligent infliction of emotional distress (factor 1), factors two, three, four and five are present.  Ayat alleges that he suffers from depression and post-traumatic stress disorder.  Ayat asserts a host of mental stresses that could indicate an unusually severe emotional distress.  Ayat offers the expert testimony of a neuropsychologist who will testify as to his psychological injuries and does not argue that his mental condition is not in controversy.  Finally, Ayat alleges an ongoing mental or emotional illness, thereby putting his mental condition in controversy.

**ii.     Ayat's physical condition is also "in controversy."**

While the factors articulated in *Turner* are used to determine whether a party's mental condition is in controversy, a similar analysis indicates that Ayat's physical condition is additionally in controversy.

United States District Court

For the Northern District of California

1   In his complaint, Ayat states that "[t]his action seeks compensatory damages arising

2   from the bodily injury and emotional distress sustained by the plaintiff, Naim I.Ayat ..." (See

3   Lee Decl., Exhibit A).  Section fifteen of the first cause of action states that Ayat suffers:

> ... great pain and suffering, has suffered and will in the future suffer disability and disfigurement, has been caused to incur and will in the future incur expenses for necessary medical care, treatment and services, has suffered and will in the future suffer a lost of the value of his time, earnings, profits and salaries and has been and will be damaged in his earning capacity, and has otherwise been damaged in a personal and pecuniary way.  (See Lee Decl., Exhibit A).

In addition, Ayat's answer to interrogatory number six indicates that he has

sustained physical injuries, including: smoke inhalation, back pain, earaches, significant

myofascial pain syndrome, loss of mobility, knee pain, weight gain, the sequelae of said

injuries, and the significant loss of the ability to lead a normal and enjoyable life as the

result of the injuries.  (See Lee Decl., Exhibit B).

Further, Ayat intends to rely on the testimony of a physical medicine and

rehabilitation specialist to discuss the nature and extent of Ayat's physical injuries.  (See

Lee Decl., Exhibit B).

Ayat has placed his own physical condition in controversy and does not contest that

fact.  He alleges specific bodily injuries which form the basis of his complaint for damages.

In addition, Ayat intends to call an expert to discuss the nature and extent of his alleged

physical injuries.  Clearly, Ayat's physical condition is genuinely in controversy as required

by the Supreme Court in *Schlagenhauf.*

**iii.    Good cause exists to warrant Rule 35 examinations.**

In *Schlagenhauf,* the Supreme Court discussed the 'good cause' requirement of Rule

35.  The Court stated that there are situations where the pleadings alone are sufficient to

meet the Rule 35 requirements, "[a] plaintiff in a negligence action who asserts mental or

physical injury ...  places that mental or physical injury clearly in controversy and provides

the defendant with good cause for an examination to determine the existence and extent of

such asserted injury."  *Id.* at 119.  Based on *Schlagenhauf*, good cause exists to order the

Rule 35 examinations because it is Ayat who places his own mental and physical condition

at issue, as opposed to his condition being placed at issue by Air France.

United States District Court

For the Northern District of California

1    In *Franco v. Boston Scientific Corporation*, 2006 WL 3065580 *1 (N.D.Cal.), the

2    court listed several factors that courts have considered when determining whether good

3    cause exists to order a Rule 35 examination.  The factors are: (1) the possibility of

4    obtaining desired information by other means; (2) whether plaintiff plans to prove her claim

5    through testimony of expert witnesses; (3) whether the desired materials are relevant, and;

6    (4)  whether plaintiff claims ongoing emotional distress.  *Id.* (*Internal citations omitted*).

7    First, Air France does not argue that the information sought through the Rule 35

8    examinations is unavailable through other means.  However, in *Schlagenhauf* the Court

9    characterized the availability of information sought through other means, as "relevant," and

10   in *Franco*, the court characterized it as a factor that courts have considered.  *See*

11   *Schlagenhauf* at 118; *Franco* at *1.  Neither Court characterized this consideration as an

12   element that must be met to establish good cause.  Thus, the fact that Air France has not

13   exhausted less invasive avenues of discovery may militate against a finding of good cause,

14   but is not decisive.

15   Second, as indicated above, Ayat plans to rely on the testimony of expert witnesses.

16   Independent examinations by Air France's experts are warranted to adequately scrutinize

17   and rebut the conclusions of Ayat's experts.  This factor militates in favor of a finding of

18   good cause.

19   Third, the information sought from the Rule 35 examinations goes to the heart of the

20   litigation.  Ayat seeks compensatory damages arising from bodily injury and emotional

21   distress allegedly sustained as a passenger on an Air France flight.  Ayat alleges that he

22   suffers from a host of physical and mental illnesses for which he seeks compensation.  The

23   relevance of information that may be obtained through physical and mental examinations

24   conducted by Air France's medical experts is patent.  This factor militates in favor of a

25   finding of good cause.

26   Finally, Ayat specifically alleges on-going physical and mental injuries.  Ayat makes

27   claims for "past and future medical, rehabilitation, and care-taking expenses," "past and

28   future mental pain and suffering," and alleges that he "continues to suffer from physical

injuries" such as back pain, significant myofascial pain syndrome, depression, and post-

United States District Court

For the Northern District of California

1  traumatic stress disorder.  (See Lee Decl., Exhibit B).   This factor militates in favor of a

2  finding of good cause.

3       Based on the principles set forth in *Schlagenhauf* and *Franco*, good cause exists for

4  Rule 35 mental and physical examinations.

5  **iv.    A Two-Part Mental Examination conducted by a Psychiatrist and a Neuropsychologist is warranted.**

6

7       Air France seeks to have Ayat's mental condition comprehensively tested by doctors

8  from two distinct disciplines: psychiatry and neuropsychology.  Air France submits the

9  declaration of Dr. Charles Marmar, Professor and Vice Chair of the Department of

10  Psychiatry at UCSF, and the Associate Chief of Staff, Mental Health and Director of the

11  PTSD research Program for the Department of Veterans Affairs Medical Center in San

12  Francisco.  Dr. Marmar indicates that to assess Ayat's alleged mental and psychological

13  injuries, he will conduct a series of non-invasive interviews and examinations including a

14  Structural Clinical Interview for DSM-IV Diagnosis, the Clinician Administered PTSD Scale,

15  a Developmental History, and the Lifetime Trauma History Interview.  (See Dr. Marmar

16  Decl.).

17       Dr. Marmar states that Dr. William Hooker, a colleague at UCSF who is a qualified

18  neuropsychologist, will conduct the following psychological evaluations of Ayat:  PTSD

19  Checklist; Quality of Life Inventory; Minnesota Multi-Phasic Personality Inventory -2; the

20  Rorschach Test; portions fo the Wechsler Adult Intelligence Scale -3[rd] Edition and the

21  Wechsler Memory -3[rd] Edition; the Hopkins Symptom Checklist -90-R; and the Beck

22  Depression Inventory - II.  Dr. Marmar states that the psychological evaluation is necessary

23  to obtain a complete and comprehensive picture of Ayat's current mental and psychological

24  condition, and that a team approach with a psychologist and psychiatrist is common and

25  necessary to fully assess and evaluate a patient's mental condition.  Further, Dr. Marmar

26  states that Dr. Hooker's evaluations are done by standardized testing and are useful for the

27  refinement of his own diagnosis.  Good cause exists for a two-part mental examination

28  conducted by both a psychiatrist and a neuropsychologist.

v.     **Neither a third party representative nor a tape recorder are needed in the examinations.**

In *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C.1998), the court conducted an extensive survey of federal decisions and found that the weight of authority favors the exclusion of the plaintiff's attorney from a Rule 35 examination absent a compelling reason. The court found that the majority of federal courts have rejected the notion that any third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination. *Id.*; Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch.11 (IV) - E.

In *Galieti v. State Farm Mutual Automobile Insurance Company*, 154 F.R.D. 262 (D.Colo.1994), the court similarly conducted an extensive survey of federal decisions and came to the conclusion that each case must be reviewed on its own facts, there should be no presumption either way, and the party seeking the presence of a third party or recording device must carry the burden of convincing the court. *Id.* at 265.

The court in *Tomlin v. Holecek,* 150 F.R.D. 628 (D.Minn.1993), detailed a split of authority that exists regarding this issue. The court refused to allow the presence of counsel, a third party, or tape recorder during a psychological exam because it would: (1) potentially invalidate the examination results; (2) fail to provide a "level playing field," as plaintiff was not required to tape record his examinations with his own health care providers; and (3) create an adversarial environment during an evaluation that should be neutral.

Ayat argues that he has difficulty speaking and understanding English and would therefore have difficulty describing the examination to his counsel, who would in turn have difficulty assessing any testimony offered by Air France's doctors. However, Air France has agreed to provide and pay for a court-certified Arabic interpreter to be present during the examination. The use of a neutral third-party interpreter should alleviate any communication concerns that Ayat may have.

Ayat further argues that Air France's doctors are biased because their interest is in serving Air France. The mere fact that Air France's experts were hired by Air France, standing alone, does not create enough concern to warrant a third party observer. Ayat

United States District Court

For the Northern District of California

1  submits no independent documentation indicating that the doctors offered by Air France

2  present a cause for concern.

3        Air France argues that the presence of a third party witness would diminish the

4  accuracy of the evaluations and create an adversarial atmosphere.  Air France's concerns

5  are legitimate.  In *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605 (C.D.Cal.1995), the

6  court denied a request to have a third party observe a mental examination because, "[t]hird

7  party observers may, regardless of their good intentions, contaminate a mental

8  examination."  *Id.* at 609-10 (citing *Tomlin* and *Galieti*).  The court stated that the potential

9  for a third party observer to interfere with, or even contaminate, a mental examination is

10 recognized in California Code of Civil Procedure Section 2032(g)(1), which provides that an

11 observer may be present at a physical examination but does not provide for an observer at

12 a mental examination.  *Id.* at 610.  The court also took into consideration the fact that the

13 examining doctor did not propose to use unorthodox or potentially harmful techniques in his

14 examination.  *Id.*  Based on the facts of this case, a third party observer or tape recording

15 device is unwarranted for the examinations.

16 **vi.    The Rorschach Test, the Wechsler Adult Intelligence Scale ("WAIS"), and the**
17 **Wechsler Memory Scale ("WMS") are appropriate tools for assessing Ayat's phsychological state.**

18        **a. The Rorschach Test**

19        Air France provides the declaration of its proposed neuropsychologist,  Dr. William

20 D. Hooker, who asserts that the Rorschach Test is neither overly subjective nor prone to

21 examiner bias.  Dr. Hooker's declaration contains an article from the Journal of Personal

22 Assessment, 95(2), 219-237, entitled, *The Status of the Rorschach in Clinical and Forensic*

23 *Practice: An Official Statement by the Board of Trustees of the Society for Personality*

24 *Assessment*.  The article states:

25        This statement is intended for psychologists, other mental health professionals,
       educators, attorneys, judges, and administrators.  Its purpose is to present a
26     summary of the issues and evidence concerning the Rorschach.  This statement
       affirms that the Rorschach possesses reliability and validity similar to that of other
27     generally accepted personality assessment instruments, and its responsible use in
       personality assessment is appropriate and justified.  (See Hooker Decl., Exhibit A).

28

1    The article specifically states that the Rorschach in court and legal settings, "meets

2   the variety of legal tests for admissibility, including validity, publication in peer reviewed

3   journals, and acceptance within the relevant professional community." (See Hooker Decl.,

4   Exhibit A). The article is based on a significant amount of supporting data. Dr. Hooker

5   additionally states that when administering the Rorschach Test, he will follow the

6   standardized administration and scoring protocols based on the Exner Comprehensive

7   Scoring System. Based on Dr. Hooker's declaration and the data that Air France has

8   submitted to the Court, the Court finds the Rorschach is a proper tool to assess the

9   psychological functioning and injury of Ayat.

10          **b. The WAIS and WMS**

11          Dr. Hooker asserts that the portions of the WAIS and the WMS that he will be using

12   assess working memory and mental processing speed: Ayat's ability to hold auditory-verbal

13   and visual information in mind while working with it; Ayat's ability to incidentally recall visual

14   information he was working with; Ayat's ability to attend and concentrate using auditory-

15   verbal and visual information, and; Ayat's psychomotor speed. Dr. Hooker states that all of

16   these mental abilities can be adversely impacted by stress, anxiety, and/or depression and

17   are indirect measures of an individual's psychological state. Dr. Hooker states that he will

18   not be assessing Ayat's intelligence or his immediate and delayed memory, and therefore

19   the language and cultural differences will not compromise or contaminate the results. (See

20   Hooker Decl., Exhibit A). Based on Dr. Hooker's detailed explanation of the WAIS and

21   WMS, it appears as though Ayat's concerns about cultural bias should be alleviated, and

22   the tests appear calculated to enable Dr. Hooker to provide a comprehensive opinion.

23   **vii.  The Effect of the Goodrich Defendants on Rule 35 examinations**

24          The addition of Goodrich as a defendant should not preclude Rule 35 examinations.

25   Ayat chose to bring Goodrich into the litigation, and only filed his Second Amended

26   Complaint in January of 2007. Ayat cannot use the addition of Goodrich to preclude Rule

27   35 examinations now. Ayat may seek a protective order later if necessary.

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

### IV.  Conclusion

Air France's motion for Rule 35 examinations is GRANTED.  Ayat's mental and physical condition are in controversy and good cause exists for the examinations.  Air France may conduct the mental examination of Ayat as it proposes, using both a psychiatrist and a neuropsychologist.  Neither a third party observer nor a recording device shall be permitted in the examining room.  A neutral court appointed translator may be present.  The Rorschach Test, the Wechsler Adult Intelligence Scale and the Wechsler Memory Scale are appropriate to assess Ayat's psychological condition.  Finally, the addition of Goodrich as a defendant does not warrant denying this motion or postponing the examinations.

IT IS SO ORDERED.

DATED: April 16, 2007

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\06-1574\06-1574-ORD-Grant-51,62.wpd